## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KYVIN HUGHES**                                                **CIVIL ACTION**

**VERSUS**                                                         **NUMBER: 22-2272**

**SOCIAL SECURITY ADMINISTRATION**             **SECTION "I" (5)**

## REPORT AND RECOMMENDATION

Plaintiff Kyvin Hughes filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment,[1] and the issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

## I.      BACKGROUND

Plaintiff filed his original application for DIB and SSI on June 24, 2019, alleging a disability onset date of June 1, 2018. (Adm. Rec. at 278-87). Plaintiff alleged disability due to sickle cell disease, a brain aneurysm, and a brain plate. (*Id.* at 314). Plaintiff, born on June 12, 1992, was 25 years old on the date he alleged onset of disability and 27 years old on the date he filed his application. (*Id.* at 310). Plaintiff has a high school education, (*id.* at 315),

---

[1] Defendant initially filed a "Brief" (rec. doc. 14), but this Court converted the pleading to a cross-motion for summary judgment in compliance with this Court's briefing order. (Rec. docs. 11, 15).

and he has past work experience as a fast-food worker, a bagger, a warehouse worker, and a construction worker.  (*Id.* at 24, 315).

Defendant initially denied Plaintiff's application on September 19, 2019, (*id.* at 140-47), and again on reconsideration on August 20, 2020.  (*Id.* at 162-67).  Plaintiff sought an administrative hearing, which took place on November 8, 2021.  (*Id.* at 31-63).[2]  Plaintiff and a vocational expert ("VE"), Rosalind Lloyd, testified at the hearing.

On November 23, 2021, the ALJ issued a decision concluding that Plaintiff was not under a disability from his alleged onset date through the date of the decision.  (*Id.* at 16-25).  In the decision, the ALJ concluded that Plaintiff has the severe impairments of sickle cell disease and disorders of the back/neck/spine.  (*Id.* at 18).  The ALJ held that, through the date last insured, Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment under the regulations.  (*Id.* at 19).  The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of sedentary work activity as defined in 20 C.F.R. § 404.1567(a).  (*Id.* at 15).

The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.* at 24-25).  The ALJ thus concluded that Plaintiff was not disabled from June 1, 2018 through the date of the decision, November 23, 2021.  (*Id.* at 23).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled from June 1, 2018 through the date of the ALJ's decision.  On May 20, 2022, the

---

[2] This hearing was telephonic as it occurred during the COVID-19 pandemic.

Appeals Council denied Plaintiff's appeal.    (*Id.* at 1-6).  Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).  If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  It is more than a scintilla but may be less than a preponderance.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360.  The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  *See Arkansas v. Oklahoma*, 503

U.S. 91, 112-13 (1992).  Conflicts in the evidence are for the Commissioner to resolve, not

the courts.  *Carey*, 230 F.3d at 135.  Any of the Commissioner's findings of fact that are

supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.  Despite this Court's

limited function on review, the Court must scrutinize the record in its entirety to determine

the reasonableness of the decision reached and whether substantial evidence exists to

support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d

1019, 1022 (5th Cir. 1990).

III.    **ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, Plaintiff

must show an inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered disabled

only if a physical or mental impairment is so severe that the claimant is unable, not only to

do previous work, but cannot, considering age, education and work experience, participate

in any other kind of substantial gainful work that exists in significant volume in the national

economy, regardless of whether such work exists in the area in which the claimant lives,

whether a specific job vacancy exists, or whether the claimant would be hired if she or he

applied for work. 42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

404.1501-404.1599 & Appendices, §§ 416.901t-416.988 (1995).  The regulations include a

five-step evaluation process for determining whether an impairment prevents a person from

engaging in any substantial gainful activity.  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  First, the claimant must not be presently working at any substantial gainful activity.  Second, the claimant must have an impairment or combination of impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience.  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)).  If the ALJ determines that a Plaintiff is not disabled under step five of the five-part test, the Commissioner must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).  Step five also requires the Commissioner to use the medical-vocational guidelines to make a disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

IV.    **ISSUES ON APPEAL**

There are two issues on appeal:

(1)    Whether the ALJ properly relied on the Medical-Vocational Guidelines to find that Plaintiff was not disabled at Step 5.

(2)    Whether the ALJ properly determined that Plaintiff has the RFC to perform a full range of sedentary work.

V.    **ANALYSIS OF THE ISSUES ON APPEAL**

(1)    **Whether the ALJ properly relied on the Medical-Vocational Guidelines to find that Plaintiff was not disabled at Step 5.**

At step four of the sequential evaluation process, the ALJ found that Plaintiff had no past relevant work because he had not performed any of his previous jobs long enough to qualify as past relevant work.  (Adm. Rec. at 24);  20 C.F.R. §§ 404.1565, 416.965. Accordingly, the ALJ proceeded to Step Five to determine if Plaintiff can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h), 416.920(a)(4)(iv), (f), (h) (noting that if the ALJ does not have enough information regarding a claimant's past relevant work, the ALJ proceeds to Step Five to determine the claimant's RFC).  The ALJ looked to the Medical-Vocational Guidelines (the "Grids") to determine whether Plaintiff can perform other work.  (Adm. Rec. at 24); *see* 20

C.F.R. §§ 404.1569, 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2. When a claimant's vocational characteristics coincide with the factors of a rule in the Grids, the existence of jobs in the national economy is established, and the claimant is considered not disabled. *See* 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a; 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b); *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983).

At the time of the ALJ's decision, Plaintiff was 29 years old with a high school education. (Adm. Rec. at 13, 280, 315); *see* 20 C.F.R. §§ 404.1563(d), 404.1564(b)(3), 416.963(d), 416.964(b)(3). The Court finds that the ALJ correctly used Grid Rule 201.27 to find that Plaintiff was not disabled. (Adm. Rec. at 23-24); *see* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.27. Grid Rule 201.27 applies to a "[y]ounger individual age 18-44," with a high-school education or more, and who has unskilled or no previous work experience. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.27. Under these factors, Grid Rule 201.27 establishes that the individual is not disabled and limited to the full range of sedentary work. *Id.*

Plaintiff complains that the ALJ did not consider his long-term use of Oxycodone- and Hydrocodone-based medications that may prevent his employment with an employer who screens for drugs. Plaintiff appears to argue that the ALJ failed to consider the alleged side effects from his medication – added breaks, excessive absences, and impaired attention and concentration – that caused nonexertional limitations. Plaintiff failed to testify to any such side effects at the administrative hearing. (Adm. Rec. at 44). Plaintiff only mentioned the potential effects of his medication in a post-hearing brief that the ALJ refused to consider. (*Id.* at 16, 394-95).[3] And while Plaintiff listed the medications that he takes on his application

---

[3] The ALJ declined to consider the post-hearing brief because the brief did not comply with 20 C.F.R. § 1435(a),

forms, he did not indicate that he had any side effects that would affect his work performance. (*Id.* at 342, 374). Indeed, Plaintiff failed to cite – and this Court has found no – evidence in the medical records that he complained of side effects from his medications. Ultimately, Plaintiff failed to show that any possible side effects of his medications affected his ability to work. Thus, Plaintiff failed to meet his burden of providing objective medical evidence to support his claims.

The Court finds that the ALJ properly found that Plaintiff's impairments limit him to a full range of sedentary work. (*Id.* at 19, 20-24). Plaintiff failed to show that his alleged side effects would prevent him from performing the full range of sedentary work. Grid Rule 201.27 satisfied the Commissioner's burden of showing that work existed in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a. The Grids thus provided substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the SSA, and it was not improper for the ALJ to rely on them given Plaintiff's lack of past relevant work.

**(2)    Whether the ALJ properly determined that Plaintiff has the RFC to perform a full range of sedentary work.**

As noted above, Plaintiff alleged disability due to sickle cell disease, brain aneurysm, and brain plate. (Adm. Rec. at 314). Citing medical treatises – but no case law – Plaintiff argues that sickle cell patients have a life expectancy that is 20 to 30 years shorter than those without the disease and that "'[p]ain causes significant morbidity for those living with sickle

---

which requires that all evidence be submitted to the ALJ no later than five days prior to the hearing unless extraordinary circumstances exist under 20 C.F.R. § 1435(b). (*Id.* at 16). The ALJ found that no extraordinary circumstances existed under subsection (b). (*Id.*).

cell disease (SCD) and has a profoundly negative impact on patients' health-related quality of life.'" (Rec. doc. 13-2 at 7) (citing *American Society of Hematology 2020 Guidelines for sickle cell disease: management of acute and chronic pain* (Blood Advances (June 19, 2020) 4(12) at 2657). Plaintiff maintains that the ALJ failed to rely on medical opinions and formulated Plaintiff's RFC on his own unsupported opinion.

The ALJ fully considered the objective medical evidence in the record. (Adm. Rec. at 22-23). An ALJ properly considers the objective medical evidence in testing credibility and finding a claimant's subjective complaints exaggerated. *See Johnson v. Heckler*, 767 F.2d 180 (5th Cir. 1985). A claimant's statements alone may not be the sole basis for conclusions regarding disability; objective medical evidence must support a claim. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding. *See* 20 C.F.R. §§ 404.1529, 416.929. Subjective complaints must be corroborated, at least in part, by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). The ALJ performed a thorough analysis of Plaintiff's conditions. (Adm. Rec. at 22-23). The objective medical evidence indicates that Plaintiff had some limitations, but not to the disabling degree to which he testified.

The objective medical evidence reveals that Plaintiff has a long-standing history of sickle cell disease – diagnosed at birth – with infrequent emergency department presentations/hospitalizations (two to three a year) for pain crises. (*Id.* at 20, 22, 827, 832, 837). Treatment records reveal one admission for a sickle cell crisis in June 2019 when Plaintiff was admitted to the hospital with other complications including acute respiratory

9

distress syndrome. (*Id.* at 22, 822). This resulted in a prolonged hospital stay of four weeks and an additional two weeks of inpatient rehabilitation/occupational therapy. (*Id.* at 22, 822, 1733). Taken in its entirety, however, the record does not reflect frequent sickle cell crises. (*Id.* at 22). At the administrative hearing, Plaintiff confirmed that he was 15 years old the last time that he had a sickle cell infusion. (*Id.* at 22, 41-42). He also reported that his last sickle cell crisis occurred two months before the November 2021 hearing. (*Id.* at 41). He did not go to the doctor at that time because his doctors had informed him that he could lessen his hospital visits if he took his medication properly. (*Id.*). He followed his doctors' advice and took his medication properly, every six hours, and stayed hydrated with fluids as his doctors had instructed him. (*Id.*). He noted that he follows up for sickle cell every six months. (*Id.* at 41).

The medical record also reveals that Plaintiff was in a motor vehicle accident on July 9, 2020 and was diagnosed with cervical sprain. (*Id.* at 22, 1790-1793). Plaintiff testified that he has a "dislocated spine," and his hip is out of socket as a result of the accident. (*Id.* at 43). He testified that a surgery of some sort – he did not know which – was recommended, but he elected not to have it because his insurance would not cover it. (*Id.* at 23, 44). The surgery recommendation is not confirmed in the medical record. (*Id.* at 22). Plaintiff also testified that he went to physical therapy but quit going after his insurance would no longer cover it. (*Id.*). Plaintiff's testimony and reports to his medical provider were that several of his limitations or problems were the result of this accident and were not an issue before it had occurred. (*Id.* at 22-23, 1758). Notably, the ALJ observed no evidence that Plaintiff had a post-motor vehicle accident care provider. (*Id.* at 23). Plaintiff also testified that he used

a cane because of the motor vehicle accident. (*Id.* at 23, 46). The ALJ found that this testimony was inconsistent as to when, where, and why he needed such a cane. (*Id.* at 23). Specifically, a recommendation to use a cane is not in the record. (*Id.* at 23). Plaintiff corroborated this fact by testifying that no medical provider had ordered or told him to use a cane. (*Id.* at 23, 46).

To arrive at his conclusion, the ALJ considered Plaintiff's reported daily activities. (*Id.* at 22); *see Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status."). Plaintiff testified that he lives in a home with his parents, his son, and his brothers. (*Id.* at 48). He does his own laundry, and he gets his son ready for school. (*Id.* at 49). On a normal day, he reported his pain is a seven or eight of 10 *without* medication. (*Tr.* 50). Plaintiff testified that he cannot do anything too strenuous secondary to excruciating pain. (*Id.* at 42). He maintained that it hurts to throw a football with his son. (*Id.* at 42). He can lift bags of chips but not liquids because it hurts his hips and spine. (*Id.* at 42). He testified that he normally lies down all day or sits up in his bed. (*Id.* at 51). He sits with a cushion underneath his buttocks and behind his lower back. (*Id.* at 49). He explained that he is active, up and standing, about four to six hours a day. (*Id.* at 54). He periodically sits during this time, and he lies down every two to three hours for 10 to 15 minutes. (*Id.* at 54). Somedays, about five to six in a usual month, he is unable to do anything. (*Id.* at 55). However, when he sees his son, he wants to get up. (*Id.* at 55). He stated that his condition had been about the same during the previous two years. (*Id.* at 55).

Plaintiff testified that he drives every now and then.  (*Id.* at 45).  He has self-restricted driving secondary to pain and medications.  (*Id.* at 45).  Since the  motor vehicle accident, he has used his cane to go to the restroom and purchased the cane on his own to help his spine and hip.  (*Id.* at 46).  He uses the cane to walk, throw the ball with his son, for everything.  (*Id.* at 47).  When questioned by his representative, Plaintiff testified that he uses a wheeled walker at times, but when he is outside of his house about twice a week, he uses the cane because it is faster.  (*Id.* at 53).

The ALJ found that Plaintiff's testimony about his sitting limitations was inconsistent.  (*Id.* at 23, 49).  Plaintiff testified that the day before the administrative hearing, he had spent the entire day watching football with his family and grilling outside and had no issue with sitting.  (*Id.* at 23, 48).  Yet, the ALJ found that Plaintiff's testimony that he needed to sit almost constantly contradicted his testimony related to his activities the day before the administrative hearing.  (*Id.* at 23, 48-49).  The ALJ also concluded that Plaintiff's testimony was inconsistent as to his pain level and the frequency at which he takes pain medication.  (*Id.* at 23, 52-53).  Thus, the ALJ properly found that Plaintiff's testimony was somewhat inconsistent as to his limitations.  (*Id.* at 23).  The ALJ acknowledged Plaintiff's subjective complaints.  (*Id.* at 21-22).  While the ALJ found that Plaintiff's impairments could reasonably be expected to cause Plaintiff's alleged symptoms, the ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, including Plaintiff's own testimony.  (*Id.* at 22).  It is axiomatic that the ALJ may discount a claimant's subjective complaints if inconsistencies exist, as here, between the alleged

impairments and the evidence as a whole. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

The ALJ concluded that the medical evidence in its entirety did not support Plaintiff's allegations of disabling limitations. *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (holding that subjective evidence need not be credited over conflicting medical evidence.). The June 2019 hospital admission is the only episode or incident in the medical record that demonstrated a less than sedentary ability. (Adm. Rec. at 23). However, except for his hospital stay and rehabilitation, at no time does the record support less than a full range of sedentary work. (*Id.* at 23). Based on the record and Plaintiff's testimony, Plaintiff was either in the hospital or using a walker/wheelchair from June 2019 through August 2019, which is less than 12 months. (*Id.* at 23, 822, 1487, 1733); *see also* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the durational requirement."). As noted, Plaintiff was also inconsistent with his pain level and the frequency at which he takes pain medication. (Adm. Rec. at 23, 50); *see Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (finding that the failure to take pain medication or follow prescribed treatment is proper credibility factor and indication of nondisability.). The Court finds that the ALJ's analysis reveals a thorough consideration of the objective evidence and an appropriate assessment of Plaintiff's impairments.

As part of the assessment of Plaintiff's RFC, the ALJ further considered the medical sources who reviewed the evidence. (Adm. Rec. at 23). As Plaintiff applied for benefits on March 12, 2020, the ALJ applied the revised regulations for evaluating medical opinion

evidence. (*Id.* at 23). Under the revised regulations, ALJs will not defer to any medical opinion or prior administrative finding, and must instead evaluate medical opinions for persuasiveness, articulating their consideration of the two most important factors: supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). "Supportability" refers to the relevance of the objective medical evidence and supporting explanations offered by a medical source in support of his statement. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to how consistent the statement is with the evidence as a whole. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The agency will explain its consideration of the supportability and consistency factors and may, but is not required to, articulate its consideration of other factors affecting persuasiveness. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.9520c(b)(2). In evaluating Plaintiff's claim, the ALJ explained the persuasiveness of the opinion evidence in accordance with these new regulations. (Adm. Rec. at 23).

The ALJ considered the prior administrative findings of the State-agency medical consultants who were familiar with the agency's rules and regulations and had the opportunity to review the available evidence in the record. (*Id.* at 23, 105, 127-128); *see* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) ("This [factor] includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). On September 16, 2019, at the initial level, Joseph Michalik, M.D. determined that Plaintiff could perform the full range of medium exertional work with additional environmental limitations from June 7, 2019 through June 7, 2020. (Adm. Rec. at 105). On August 19, 2020, at the

reconsideration level, Timothy Honigman, M.D. affirmed the determination of Dr. Michalik. (*Id.* at 127-128). In finding the State agency determinations unpersuasive, the ALJ noted that the objective medical record did not support the determination that Plaintiff can perform the full range of medium exertional work with limitations. (*Id.* at 23); *see* 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2) (defining supportability). Specifically, the ALJ found that Plaintiff would not have been able to perform at the medium level for the entire time from the alleged onset date, June 1, 2018, through the present. (*Id.* at 23). He further found that an assessment of the full range of sedentary work was more consistent with Plaintiff's impairments and treatment records as previously discussed. (*Id.* at 23); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (defining consistency). In other words, here, the ALJ acknowledged the shortcomings of the medical opinions and proceeded to incorporate additional symptoms in imposing a more restrictive limitation – that is, more favorable to Plaintiff – than those previously suggested. *See Wills v. Kijakazi*, No. 22-20609, slip op. at 6 (5th Cir. June 14, 2023).

As noted above, the crux of Plaintiff's main argument is that the record does not contain substantial evidence to support the ALJ 's RFC for a full range of sedentary work and that he, as a sickle cell disease patient, is entitled to a full and proper assessment of his condition. It thus appears that he argues that the ALJ failed to develop the record fully and fairly. The Court finds that the evidence in the record, which the ALJ referenced and discussed at length, was sufficient for the ALJ to make an informed decision on Plaintiff's RFC. (Adm. Rec. at 20-24); *Jones v. Astrue*, 691 F.3d 730. 733 (5th Cir. 2012) ("The regulation Jones cites does not require the ALJ to order more evidence where the record is sufficient to

establish whether the claimant is disabled."). The Court recognizes the case law that an ALJ has a basic obligation to develop a full and fair record. *Id.* He is not, however, required to act as the claimant's counsel. *Richardson v. Perales*, 402 U.S. 389, 410 (1971). A claimant bears the burden of proving he was disabled by providing evidence to support his allegations. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); 404.1529(a), 416.929(a). "It is not unreasonable to require the claimant, who is in a better position to provide information about [his] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

Moreover, a court "will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). Plaintiff has failed to demonstrate that he would have adduced evidence that would have altered the ALJ's RFC determination. All of the evidence in Plaintiff's motion and memorandum was before the ALJ at the time that he evaluated the objective medical evidence and rendered his decision.

## VI.   CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

**NOTICE OF RIGHT TO OBJECT**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[4]

New Orleans, Louisiana, this 28th day of _____ June _____, 2023.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.

17